UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD DIEDERICH,                          Case No.: 19-12799
                    Plaintiff,
v.                                       Matthew F. Leitman
                                         United States District Judge
HEIDI WASHINGTON, *et al.*,
                    Defendants.          Curtis Ivy, Jr.
_____/               United States Magistrate Judge


**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT (ECF No. 22)**


I.    **PROCEDURAL HISTORY**

Plaintiff Chad Diederich filed this civil rights matter, *pro se*, on September

25, 2019, against eight Michigan Department of Corrections (MDOC) officials and

employees. (ECF No. 1). Diederich alleges violations of the First, Fourth, Fifth,

and Eighth Amendments to the United States Constitution. On April 8, 2020, the

Defendants filed a motion for summary judgment based on failure to exhaust

administrative remedies and to dismiss based on Eleventh Amendment immunity.

(ECF No. 22). Diederich responded (ECF No. 26), and Defendants replied (ECF

No. 27). This case was referred to me for all pretrial matters on October 28, 2020.

(ECF No. 28).

For the reasons set forth below, I recommend Defendants' motion for summary judgment be **GRANTED IN PART, DENIED IN PART**.

## II. BACKGROUND

### A. Complaint Allegations

The events alleged in the complaint occurred at two different facilities – Central Michigan Correctional Facility (STF) and Jackson Correctional Center (JCS). (*See* ECF No. 1, PageID.11). Diederich sues MDOC Director Heidi Washington, Warden John Christiansen, Assistant Resident Unit Supervisor (ARUS) Nicholas White,[1] Resident Unit Manager (RUM) I. Scott, Grievance Coordinator J. Parsons, Acting RUM T. Fighter, Store Keeper Colthorp,[2] and Deputy Warden D. Fenby in both their individual and official capacities. (ECF No. 1). Except for Defendant Washington, the Defendants were STF employees at the time of the events alleged.[3]

---

[1] According to Defendants, White was a Prison Counselor, not an ARUS, at the time of the events alleged in the complaint. White's true title does not impact the issues currently before the Court.

[2] This defendant's name is spelled differently by the parties. Diederich used "Colthrop" in the complaint, but spelled it "Colthrop" and "Colthorp" interchangeably in his response brief. (ECF No. 26, PadeID.196). The defendants spell it "Colthorp." In the caption it is "Colthrop." Since this defendant refers to himself as Colthorp, and plaintiff occasionally followed suit in his response, I will refer to him as Colthorp in this report and recommendation.

[3] Diederich raised allegations against some STF employees for conduct which occurred while he was housed at JCS. For example, he alleges he was denied basic hygiene products between October 2018 and May 2019. (ECF No. 1, PageID.14). Diederich was transferred from STF to JCS on October 15, 2018 where he was housed until March 2019. (*Id.* at PageID.13).

Diederich alleges from May 2018 through October 2018, defendants Washington, White, Scott, and Christiansen denied him paper and envelopes he needed to pursue his legal actions, thereby denying him access to the courts.  (ECF No. 1, PageID.12).  More specifically, he alleges during the aforementioned time frame that defendant White, who was apparently entrusted with the responsibility of providing stationary, told him he was out of envelopes.  He further maintains other prison officials told him while they possessed envelopes, they could only be given to White to distribute.  In response to that assertion, White allegedly informed Diederich policy only required that he loan postage, not envelopes.  Diederich also contends White refused to give him "usable" paper.  According to Diederich, White provided recycled paper which was previously printed on.  Diederich alleges on three separate occasions he spoke to defendant Scott about these issues.  During the conversations, Diederich maintains Scott assured him he would address Diederich's concerns with White and the issues would be corrected.  According to Diederich, Scott issued a memo on the subject but refused to enforce it.  Diederich further alleges he spoke to defendant Christiansen once in person and once in writing about these issues, but Christiansen refused to "get personally involved."  (*Id.*).

In addition, Diederich maintains during September and October 2018, defendants Parsons and Christiansen refused to file his grievances and shredded

one of them.  Further, Diederich alleges on October 5, 2018, Parsons threatened him by declaring he would lose his institutional job.  (*Id.* at PageID.13).  According to Diederich, on October 15, 2018, defendants Parsons, Christiansen, White, and Fenby transferred him to JCS in retaliation for pursuing grievances and lawsuits against them.  Following the transfer, Diederich lost his job.  Diederich maintains these defendants knew he was using the earnings from that position to pay his legal fees associated with pursuing appeals and other civil litigation.  (*Id.*).

Diederich's complaint continues and alleges that between October 2018 and March 2019, defendants Parsons and Christiansen failed to file and respond to his grievances, in violation of his "due process rights."  (*Id.* at PageID.14).  The Court notes during this time period Diederich was housed at JCS, not STF.

Between October 2018 and May 2019, defendants Washington, Christiansen, Scott, Fighter, and Colthorp allegedly violated the Eighth Amendment by denying Diederich basic hygiene products such as soap and a toothbrush.  Diederich contends he notified Washington and Christiansen by mail that indigent hygiene supplies were being withheld.  (*Id.*).  Again, between October 2018 and March 2019 Diederich was housed at JCS.

B.    Instant Motion for Summary Judgment

All eight defendants jointly filed the pending motion for summary judgment. (ECF No. 22).  Among the eight grievances plaintiff filed through the three-step

MDOC grievance process, Defendants identified four in which they maintain the allegations were not ripe as plaintiff failed to exhaust administrative remedies regarding them.  (*Id.* at PageID.101-02).  Specifically, they maintain Diederich did not name all the defendants in the grievances.  (ECF No. 22, PageID.102-104).  Diederich identified a fifth purportedly applicable grievance.  (ECF No. 26, PageID.197).

In response, Diederich began by stating the following:

> The Plaintiff would contend that in the case of [*Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010)] [t]he 6th Circuit found that by considering Red-Beys [sic] grievances on the merits and overlooking its own procedural bar, Defendants should not benefit from the procedural bar.  As in this instance this issue has been resolved with the 6th circuit's ruling in this matter.

(ECF No. 26, PageID.196).  He went on to address three of the four grievances discussed in Defendants' brief.  However, he did not discuss *Reed-Bey*'s applicability to any of the grievances.  Instead, Diederich advanced the position he named one or two defendants in the grievances, presumably in an effort to show those grievances exhaust claims as to those defendants.  (*Id.* at PageID.196-97).  Defendants did not address *Reed-Bey* in their reply.  (ECF No. 27).

Defendants also argued they are immune from suit in their official capacities under the Eleventh Amendment.  (ECF No. 22, PageID.104-05).   Diederich insists they were not acting in their official capacities contending had they been, they

would not have violated prison directives and procedures.  (ECF No. 26,

PageID.197).

## III.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing

if a party "fails to properly address another party's assertion of fact," then the court

may "consider the fact undisputed for purposes of the motion").  "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth

specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d

446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315

(11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a *pro se* litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

      B.    Exhaustion under the PLRA

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit."  *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]"  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures."

*Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

The prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's

original complaint contained at least one fully exhausted claim." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017).

Finally, "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. *Id.* As such, defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

C.     Grievance Procedures at MDOC

Pursuant to Policy Directive 03.02.130, dated July 9, 2007, the administrative remedies available at the MDOC are as follows.[4] First, the inmate must attempt to resolve issues with the staff member involved within two business days of becoming aware of a grievable issue.  (ECF 22-2, PageID.112, at ¶ P).  If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form.  (*Id.*).  "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  (*Id.* at

---

[4] Defendants attached to their brief and cite to the version of the policy directive effective July 9, 2007.  The policy directive was superseded on March 18, 2019.  (*See* ECF No. 22, pageID.101, n.5; MDOC Policy Directive 03.02.130 *located at* https://perma.cc/4RVN-JS58 (last visited December 3, 2020)).  Two grievances at issue were submitted in May 2019, after the current version took effect.  Diederich does not challenge Defendants' reliance on the 2007 version.  And, I note that the 2019 version does not appear to have altered the parts of the 2007 version applicable to this case.  For these reasons, I will cite to the 2007 version, the version the parties relied on for this summary judgment motion.

PageID.113, ¶ R).  The inmate should receive a response at Step I within 15 business days of filing the grievance.  (*Id.* at ¶ X).

If the inmate is dissatisfied with the Step I disposition, or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form.  (*Id.* at PageID.114, ¶ BB).  As with Step I, the inmate should receive the Step II response within 15 business days.  (*Id.* at ¶ CC).  Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the due date, the inmate may file a Step III grievance.  (*Id.* at PageID.115, ¶ FF).  The matter is fully exhausted after the disposition of the Step III grievance.  *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted.").

D.   Analysis

Defendants' exhaustion argument is based on Diederich's failure to name them in the Step I grievances.  Defendants identified the following grievances as related to the claims in the complaint: STF-18-08-0667-15Z (STF-0667), STF-18-11-0997-11Z (STF-0997), STF-19-05-0487-01I (STF-0487), and STF-19-05-0524-03D (STF-0524).  All four grievances were addressed on the merits; prison officials did not identify any procedural errors, including failure to name.  (ECF No. 22-3, PageID.123-27; 131-35; 150-55; 164-68).

1.    STF-0487

As an initial matter, Defendants are entitled to summary judgment regarding grievance STF-0487.  Diederich filed STF-0487 on May 14, 2019.   Diederich alleged he placed an indigent store order on April 3, 2019, for "basic hygiene needs," but he did not get the items he ordered.  (ECF No. 22-3, PageID.134).  Diederich indicated he spoke with "PC Brown" to resolve the issue.  (*Id.*).  This grievance was addressed on the merits at all three steps.  (*Id.* at PageID.131, 133, 135).  The corresponding claim in the complaint is against defendants Washington, Christiansen, Scott, Fighter, and Colthorp.  These defendants argue that grievance STF-0487 does not exhaust the claim because Diederich did not name them in the grievance.  (ECF No. 22, PageID.103-04).

Diederich failed to address this grievance in his response brief.  (ECF No. 26).  The Court cannot construe an argument where the plaintiff has not so much as mentioned the grievance at issue, and certainly cannot be expected to craft an argument from whole cloth on the plaintiff's behalf.  Accordingly, grievance STF-0487 should not be found to have exhausted the indigent store order claim against Defendants.

2.    STF-0667, STF-0997, and STF-0524

Diederich filed grievance STF-0667 at Step I on July 23, 2018.  In the grievance, Diederich stated the following:

12

> Per PD for offender mail, a reasonable supply of writing
> paper and pens/pencils will be made available.  I've
> made a request for these items and am being denied.
>
> Per PD for offender access to courts the cost of typing
> paper for legal use will be loaned to prisoners.  I've made
> numerous inquires and unit ARUS/PC and [what appears
> to be] law librarian won't acknowledge the request.  Each
> say talk to the other.
>
> Per PD for indigent prisoners the cost of [what appears to
> be] 10-102 letters (postage) will be loaned.  They use
> [sic] to provide indigent envelopes.

(ECF No. 22-3, PageID.167).  Plaintiff and Defendants identified the "ARUS/PC"

as defendant White.  (ECF No. 22, PageID.102; ECF No. 26, PageID.196).

The grievance was investigated and addressed on the merits by defendant

Scott.  Scott summarized the grievance as alleging Diederich "was not given typing

paper and envelopes as an indigent prisoner per policy."  (ECF No. 22-3,

PageID.168).  Scott's investigation revealed Diederich had been given copy paper

as needed and "ARUS's and PC's" would be issuing stamped envelopes to

indigent prisoners per policy.  (*Id.*).  Defendant Christiansen addressed the Step II

appeal.  He denied the appeal because there was no evidence of a policy or

procedure violation.  Christiansen indicated he spoke with Diederich's PC

(presumably defendant White) on September 12th.  The PC stated there was paper

in the units and envelopes and stamps were being provided.  (*Id.* at PageID.166).

The Step III appeal was denied.  (*Id.* at PageID.164).

Plaintiff's denial of access to the courts claim in this matter was raised against defendants White, Washington, Scott, and Christiansen.  Defendants concede the claim against White is exhausted by this grievance.  But, Diederich did not name defendants Washington, Scott, or Christiansen.  (ECF No. 22, PageID.102-03).

Grievance STF-0997 concerns the alleged retaliatory transfer.  In the complaint, Diederich alleged defendants Parsons, White, Christiansen, and Fenby transferred him to another facility in retaliation for pursuing grievances against them.   In this grievance, he alleged Defendant Parsons had him transferred in retaliation for filing a grievance.  (ECF No. 22-3, PageID.153).  Prior to filing this grievance, Diederich attempted to resolve the issue by talking to defendant White.  White indicated he did not have anything to do with the transfer.  (*Id.*).  Diederich was not interviewed at Step I because he was no longer housed at STF.  (*Id.* at PageID.154).  However, the respondent still conducted an investigation into the claims and found no evidence of retaliation.  (*Id.*).  The respondent thus addressed the grievance on the merits at Step I, and the grievance continued to be addressed on the merits at Steps II and III, but was denied.  (*Id.* at PageID.150, 152).  Defendants concede this claim is exhausted as against Parsons and White, but maintain the claim is not exhausted against Christiansen and Fenby.

14

Grievance STF-0524[5] is about the denial of hygiene products.  In the complaint, Diederich alleged between October 2018 and May 2019, defendants Washington, Christiansen, Scott, Fighter, and Colthorp denied him basic hygiene products despite his indigent status.  In the grievance, Diederich indicated he attempted to resolve the issue with Christiansen prior to filing, but Christiansen did not respond.  (*Id.* at PageID.126).  In the body of the grievance Diederich did not name any prison official, but stated his claim about being denied basic hygiene products despite his indigent status.  (*Id.*).  Diederich was interviewed on the claims.  (*Id.* at PageID.127).  The respondent addressed the claims only for the period between March-May 2019 because Diederich was housed at JCS from October 16, 2018 to March 5, 2019.  For the months he was housed at STF, the respondent concluded after investigation that policy had not been violated.  The grievance was denied.  (*Id.*).  Diederich received responses on the merits at Steps II and III as well.  (*Id.* at PageID.123, 125).

As provided above, MDOC policy requires that inmates include the "[d]ates, times, places, and *names of all those involved* in the issue being grieved" in their initial grievance.  (ECF 32-2, PageID.113, at ¶ R) (emphasis added); *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  Diederich did not

---

[5] Diederich refers to this grievance with an identifier number 2524, instead of 0524. (ECF No. 26, PageID.196).  He asserts that defendants got the grievance number wrong. However, defendants have the right number – 0524.

name all the individuals he later sued and asserted were involved in the issues he grieved in 2018 and 2019.

The briefing from both Defendants and Plaintiff leave a lot to be desired. Plaintiff mentioned *Reed-Bey*, but then went on to argue only that these grievances exhaust claims against those named in the grievance, not any of the other defendants. Hence, it is not clear whether Plaintiff intended to raise *Reed-Bey* for each grievance he discussed, for only one grievance, or just as a possible argument in response. The perfunctory manner in which Plaintiff raised *Reed-Bey*, as a general matter, is insufficient. Indeed, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)). Yet, even acknowledging this principle, the Court should not ignore that Diederich at least raised the possibility that *Reed-Bey* applies here, i.e. that since the grievances were addressed on the merits, perhaps Defendants cannot now be heard to complain of a procedural defect, especially considering *Reed-Bey* is binding Sixth Circuit precedent. Defendants did not address *Reed-Bey* in their reply brief. Defendants have the burden of proof that Plaintiff did not exhaust his

16

administrative remedies.  The following discussion demonstrates why Defendants have not met their burden.

*Reed-Bey* is a case often cited, as here, for the proposition that if prison officials overlook a procedural defect and address a grievance on the merits, they waive the argument the grievance is not exhausted because of the defect.  There, Reed-Bey filed a grievance complaining about the lack of follow-up care for a shoulder injury.  *Id.* at 323.  The prison denied the appeals at Steps II and III on the merits.  *Id.* at 323-24.  Reed-Bey later sued MDOC, Correctional Medical Services (CMS), and several employees.  CMS moved to dismiss the claims against it for Reed-Bey's failure to exhaust administrative remedies because Reed-Bey did not name CMS in his grievance.  *Id.* at 324.  The Sixth Circuit found the right to enforce the naming requirement had been forfeited: "Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address Reed-Bey's grievance on the merits. . . . When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Id.* at 324–25.  Accordingly, the Sixth Circuit held "Reed-Bey properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step." *Id.* at 326.

In this case, the respondents did not raise any procedural errors on either grievance.  Instead, the grievances were all investigated and addressed on the merits at all three steps.  Defendants are correct that prisoners are required to name all the individuals involved.  Under a plain reading of *Reed-Bey*, however, Defendants cannot now argue failure to exhaust on the basis of failure to name. On the other hand, there are cases which suggest where the "grievance screener reviewing [the] grievance would have no reason to reject it for failure to name all those involved[,] . . . there was no apparent procedural defect in [the] grievance such that it could be fairly said that the screener 'overlooked (or perhaps forgave),' . . . the procedural failing."  *Johannes*, 2016 WL 1253266, at *9; *see also Boussum v. Campbell*, 2019 WL 442129, at *2 (E.D. Mich. Feb. 5, 2019); *Burley v. Abdellatif*, 2017 WL 3528927, at *8 (E.D. Mich. July 18, 2017).

It is not clear whether the principle discussed in *Johannes* saves Defendants' argument because Defendants did not address the argument let alone mention *Reed-Bey* in their reply brief.  The *Johannes* line of cases requires analysis to determine whether a reasonable jury could conclude the grievance screener overlooked a failure to name or whether the screener would have had no reason to believe there was such an issue in the grievance.  Defendants did not make this argument or undertake this analysis in reply, and the Court will not do so for them here.  In short, Defendants have not met their burden of proof that Diederich did

not exhaust his administrative remedies.  Diederich's grievances were addressed on the merits and the prison did not reject them for failure to name all those involved. The claims related to grievances STF-0667, STF-0997, and STF-0524 should be allowed to go forward.

> 3.    STF-18-10-0869-11Z (STF-0869).

In his response brief, Diederich appears to identify STF-0869 as a grievance that exhausts one or more claims in this case.  (ECF No. 26, PageID.197).  His argument is misplaced.  STF-0869 alleged Defendant Scott did not return documents Diederich attached to STF-0667.  (ECF No. 22-3, PageID.148). Because Diederich did not bring a claim against Scott for this issue, this grievance does not exhaust any claims in the complaint.

> 4.    Claim Regarding Failure to File and Respond to Grievances

Diederich alleged Defendants Parsons and Christiansen failed to file and respond to his grievances in violation of his "due process rights."  (ECF No. 1, PageID.14).  Defendants argue this claim should be dismissed because Diederich did not file a grievance on the claim.  (ECF No. 22, PageID.104).  Diederich did not contest their assertion and point to a grievance on this issue to raise a question of material fact.  (*See* ECF No. 26).  Having reviewed the grievances attached to Defendants' motion, it appears Diederich indeed did not file a grievance regarding

the failure to file or respond to grievances.  Consequently, the claim should be dismissed.

>        5.        Claim Regarding Threat to Job

Defendants also argue that Diederich did not file a grievance regarding his claim that Parsons threatened him with job loss.  (ECF No. 22, PageID.104).  Although Diederich did not respond to this argument, it is plain from grievance STF-0997 that he did grieve Parsons' threat to his job.  In that grievance he specifically alleged Parsons stated he knew about Diederich's job and pursuing grievances could affect his "future and ability to use funds from that job" to achieve his goals.  (ECF No. 22-3, PageID.153).  This grievance language at least raises a question as to whether Diederich grieved Parsons' threat to his job.  This claim should not be dismissed for failure to exhaust.

>        E.        Eleventh Amendment Immunity

Diederich sued all Defendants in both their individual and official capacities.  Although Diederich contends Defendants are not entitled to immunity, Defendants are correct that, as MDOC officials, they are entitled to Eleventh Amendment immunity from Diederich's claims when they are sued in their official capacities.  (ECF No. 22, PageID.104-05).  The Eleventh Amendment applies to a suit brought against a state by one of its own citizens.  *Ex parte Young*, 209 U.S. 123 (1908).  The Eleventh Amendment describes the contours of sovereign immunity,

providing that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend XI.  This means that "[t]he Eleventh Amendment bars § 1983 suits against a state, its agencies, and its officials in their official capacities for damages."  *Cady v. Arenac County,* 574 F.3d 334, 342 (6th Cir. 2009).  These officials include MDOC officials.  *McCoy v. State of Michigan,* No. 08-1641, 2010 WL 841198, *7 (6th Cir. March 10, 2010) ("Because sovereign immunity extends to 'state instrumentalities,' and the MDOC is 'an arm of the State of Michigan,' the MDOC is entitled to sovereign immunity on the § 1983 claim as well." (citations omitted)).

Defendants are the Director of MDOC and officials employed at STF, a facility operated by MDOC, which Diederich does not dispute.  Thus, to the extent they are being sued in their official capacities, they are entitled to sovereign immunity against Diederich's § 1983 claims based on the Eleventh Amendment to the U.S. Constitution.[6]

## IV.   RECOMMENDATION

---

[6] Diederich sought only monetary damages from Defendants.  Thus, the official capacity claims should be dismissed in their entirety.

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for partial summary judgment (ECF No. 22) be **GRANTED IN PART, DENIED IN PART**.  The undersigned further **RECOMMENDS** the claims against Defendants in their official capacities be **DISMISSED** based on Eleventh Amendment immunity.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:   December 4, 2020                     s/Curtis Ivy, Jr.
                                             Curtis Ivy, Jr.
                                             United States Magistrate Judge


## CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing document was served upon the
parties and/or counsel of record on December 4, 2020, by electronic means and/or
ordinary mail.

                                             s/Kristen MacKay
                                             Case Manager
                                             (810) 341-7850