UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD DIEDERICH,                          Case No.: 19-12799
                    Plaintiff,
v.                                       Matthew F. Leitman
                                         United States District Judge

HEIDI WASHINGTON, *et al.*,
                    Defendants.          Curtis Ivy, Jr.
_____/             United States Magistrate Judge


**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 48)**


I.      **BACKGROUND**

Plaintiff Chad Diederich filed this civil rights matter, without the assistance

of counsel, on September 25, 2019, against eight Michigan Department of

Corrections ("MDOC") officials and employees.  (ECF No. 1).  Counsel has since

been appointed for him.

Three claims and seven defendants remain: (1) First Amendment denial of

access to the courts against defendant White, (2) First Amendment retaliation

against Parsons and White, and (3) Eighth Amendment hygiene claim against

Washington, Christiansen, Scott, Fighter, and Colthorp.  (*See* ECF No. 31).  The

events occurred while Plaintiff was housed at the Central Michigan Correctional

Facility ("STF") and Cooper Street Correctional Facility ("JCS") between May

2018 and May 2019.  The facts pertaining to each claim will be addressed below in the analysis.

The remaining defendants moved for summary judgment on April 8, 2022. (ECF No. 48).  The motion is fully briefed and ready for report and recommendation.

For the reasons below, the undersigned recommends that Defendants' motion for summary judgment be **GRANTED**.

## II.   DISCUSSION

### A.   Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing

if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Plaintiff did not come forward with evidence that can be considered at the summary judgment stage. Plaintiff's complaint is unverified and thus cannot be used by the Court as evidence, neither can statements in the response brief be used

to defeat summary judgment. *See Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001) ("[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (stating that allegations in a properly *verified* complaint can be considered at this stage). The evidence submitted by Defendants is thus uncontested.

B.   Access to the Courts Claim

The First Amendment protects inmates from being denied meaningful access to the courts by the State. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). A plaintiff alleging denial of access to the courts must prove that he suffered an actual injury or harm connected to a direct appeal from a conviction, or habeas corpus petitions, or civil rights actions under § 1983. *Id*. at 349, 355; *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985) (An inmate may show actual harm by demonstrating that a denial of his access to the courts somehow prejudiced his rights in a lawsuit.). To state a § 1983 claim for the denial of access to the courts, a plaintiff must allege that the deprivation resulted from intentional conduct, *see Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006), and must make some showing of prejudice or actual injury resulting from the challenged conduct. *Lewis*, 518 U.S. at 351. This can be done by showing that the deprivation resulted in "the late filing of a court

4

document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  This right is limited to claims where the underlying action is a direct criminal appeal, a petition for writ of habeas corpus, or civil rights litigation. *Lewis*, 518 U.S. at 346.

These claims can be divided into two categories: (1) forward looking claims where "official action is presently denying an opportunity to litigate for a class of potential plaintiffs[, but t]he opportunity [to litigate] has not been lost for all time" and (2) backward looking claims where "specific cases [] cannot now be tried . . . no matter what official action may be in the future." *Christopher v. Harbury,* 536 U.S. 403, 412-14 (2002).  In both types of cases, the plaintiff must establish that a nonfrivolous legal claim has been frustrated or was being impeded.  To meet this requirement, a plaintiff must show (1) the loss of a nonfrivolous and arguable claim that is "more than hope;" (2) the defendant's acts that caused the loss of the claim; and (3) a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought. *Id.* at 415-16.

Plaintiff's claims present both forward and backward-looking claims.  The facts related to the access to the courts claim occurred between May and October 2018 at STF.  Plaintiff alleged defendant White denied him the needed paper and envelopes to file appeals in criminal cases in Oakland, Wayne, St. Clair, and Macomb counties, a petition for writ of habeas corpus in Iowa, and this § 1983

action for injunctive relief about the lack of envelopes and paper.  (ECF No. 1, PageID.12, 15).

      1.    County Appeals

The purpose of the appeals in each county was to have the amount of restitution he owed on his convictions for false pretenses reduced.  Plaintiff sought to have those courts review the evidence, including his presentence investigation report and receipts from victims, to determine a more accurate restitution amount.  The Defendants produced court records from each county related to Plaintiff's appeals.  Defendants argue that Plaintiff's testimony and the County court records belie Plaintiff's claims that he could not appeal his criminal sentences in the four counties.

The claims for thwarting appeals in Macomb and Oakland counties should be dismissed based on Plaintiff's testimony that he managed to file them.  He testified that he borrowed an envelope from another inmate to submit his appeal to Macomb County.  (ECF No. 48, PageID.339-40, at pp. 8-11; *see also* PageID.379-84, Plaintiff's appellate motion in Macomb County filed by counsel on February 28, 2019).  He also testified that he timely filed his appeal in Oakland County before coming under the custody of the Michigan Department of Corrections.  (*Id.* at PageID.345, at p. 32).  Plaintiff did not offer a rebuttal to this evidence or argue that these claims are still valid.  (*See* ECF No. 50, PageID.403-405).  There is no

genuine issue of material fact here.  A reasonable jury could only conclude that Plaintiff did not lose out on the Macomb or Oakland County appeals based on the actions of Defendant White since he filed those appeals before and during May through October 2018.  These two claims against White should be dismissed.

The access to the courts claims related to the Wayne and St. Clair County appeals should also be dismissed because, based on the court records, Plaintiff was able to, and did file timely appeals in both counties.

In St. Clair County, Plaintiff pleaded guilty to a False Pretenses charge.  He was sentenced to a period of incarceration and ordered to pay $3,346.56 in restitution.  The amended judgment of sentence is dated June 4, 2018.  (ECF No. 48, PageID.348).

To begin with, even if Plaintiff were prevented for filing appeals between May and October 2018, his time to appeal in St. Clair County went beyond October 2018.  Under Michigan Court Rule 7.205(A)(2)(b), a criminal defendant may apply for leave to appeal a final judgment within the latter of six months after entry of the judgment or 42 days after an order appointing appellate counsel.  Six months from June 4, 2018, is December 4, 2018.  So even if Plaintiff could not send the application until after October 2018, he still had time to file an appeal after the alleged interference ceased.

Plaintiff was also appointed appellate counsel on June 29, 2018. Counsel calculated 42 days from the date of appointment to file a timely motion to amend Plaintiff's presentence investigation report, January 2, 2019. The motion was timely filed on January 1, 2019. (ECF No. 48, PageID.352). On March 5, 2019, the St. Clair County Circuit Court granted the motion and amended the presentence investigation report. (*Id.* at PageID.362-63). Those amendments do not appear to address a reduction in restitution. That said, as established above, Plaintiff had six months from the date of the judgment to file an appeal, which left him with more than one month to submit the appeal after the allegedly infringing conduct ended. And, in any event, Plaintiff has not come forward with a showing that the deprivation resulted in "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim*, 92 F.3d at 416.

In Wayne County, Plaintiff pleaded guilty to false pretenses and was sentenced to a term of imprisonment and to pay $4,789.00 in restitution. The amended judgment of sentence is dated August 1, 2018. (ECF No. 48, PageID.368). Counsel was appointed for Plaintiff on July 31, 2018. (*Id.* at PageID.373). Plaintiff had six months from the date of the judgment, until February 1, 2019, to appeal. Plaintiff's appellate counsel moved to amend the presentence report on that day, noting that the appeal was timely filed within six months of the amended judgment of sentence. (*Id.* at PageID.376-77). The result

of the appeal is not in the record.  Still, the evidence suggests Plaintiff could appeal the Wayne County case after October 2018 until February l, 2019, when the alleged barriers to appeal were removed.  There is no showing of injury or prejudice in the Wayne County case because of defendant White's alleged actions.

Because Plaintiff, through counsel, filed appeals in St. Clair and Wayne County, and had time to file an appeal on the restitution amount after the alleged infringing conduct ceased, no reasonable jury could find in his favor.  The Defendants are entitled to judgment as a matter of law on the County appeal claims.

### 2.    Habeas Corpus Petition

Plaintiff testified that there were criminal charges pending against him in Iowa while he was housed at STF.  Those charges are still pending.  While incarcerated at STF, he wanted to be transferred to Iowa to answer those charges. He stated that he was prevented from "pursu[ing]" those charges by petitioning for writ of habeas corpus in Iowa state court.  He testified that had he been able to file the petition his time in custody with MDOC would have counted towards his sentence in Iowa.  That said, he did not know what the charges were or even if he would contest them or plead guilty to them.  When as asked about the injury suffered by not filing the petition between May and October 2018, he stated that he did not know what he "lost out on."  He did not file when he had access to paper

and envelopes after October 2019, and since his release from prison, he has not gone to Iowa for the charges because he cannot leave Michigan.  (ECF No. 48, PageID.341-42).

In his response brief, he provided a conclusory statement that he has demonstrated actual injury over being prevented from his habeas request.  (ECF No. 50, PageID.405).  He did not develop this point or cite any evidence. Defendants argue that since Plaintiff testified that he did not know what the charges are, whether he would have pleaded guilty, or what he forfeited by not filing the petition, he failed to show actual injury to sustain the cause of action. Plaintiff also admitted that he had not acted to address the Iowa charges since his release from MDOC, which Defendants contend suggests Plaintiff did not intend to pursue the Iowa case.  (ECF No. 48, PageID.320).

The undersigned agrees with the Defendants that Plaintiff has not shown actual injury or prejudice in the Iowa case based on the lack of paper and envelopes between May and October 2018.  Plaintiff speculates that, had he been able to file the petition between May and October 2018, his MDOC sentence would have counted towards the potential Iowa sentence.  Plaintiff did not support this statement with argument, case law, and citations to record evidence.  It is not for the Court to craft arguments for the parties, then evaluate the merits of that argument.  *See In re Cao*, 619 F.3d 410, 434-35 (5th Cir. 2010) (stating that the

court's role is not to create arguments for adjudication but to adjudicate arguments presented); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) (stating that it is not the court's responsibility to research and construct the parties' arguments); *Lewless v. Sec'y of Health & Human Servs.*, 25 F.3d 1049 (6th Cir. 1994) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (citation omitted).

Moreover, as noted, Plaintiff only speculates about what might have happened had he filed the petition during the relevant time. This speculation does not establish actual injury or prejudice to the criminal matter in Iowa. And it is noteworthy that Plaintiff did not pursue a petition after October 2018 when White's allegedly infringing conduct was no longer a barrier to filing documents in court, and has taken no action as of the date of his deposition, February 25, 2022.

On the evidence presented, no reasonable jury could return a verdict in Plaintiff's favor related to the Iowa habeas corpus petition.

3.   Section 1983 Litigation

Plaintiff alleged he was denied the ability to seek § 1983 injunctive relief between May and October 2018 about the denial of envelopes to file the County appeals and the habeas petition during that time. He testified that he was eventually able to file this lawsuit after moving to a different institution. (ECF No.

48, PageID.342). Defendants argue this claim fails for two reasons. First, since Plaintiff filed the appeals and he did not pursue the Iowa case even after the alleged barriers were removed, the claim is frivolous. Second, they assert that this claim is moot because he was released from prison and, again, Plaintiff was able to file papers with the courts he intended to pursue. (*Id.* at PageID.321-22). Plaintiff did not challenge Defendants' arguments.

This claim should be dismissed because there is no evidence of injury or prejudice to this case from Plaintiff's alleged inability to file this lawsuit between May and October 2018. Plaintiff filed his complaint and the litigation progressed accordingly. And as shown above, the evidence does not suggest that the lack of envelopes and paper prejudiced his appeals or the Iowa case, so not filing this lawsuit during that time did not cause problems in this or the other referenced cases.

C. Retaliation Claim

To establish a claim of First Amendment retaliation, a plaintiff must show (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two; in other words, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

12

"Under the third element, 'the subjective motivation of the defendants is at issue.'" *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175 F.3d at 399). The burden then shifts to the defendant, and "'[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.'" *Id*. at 267 (quoting *Thaddeus-X*, 175 F.3d at 399).

The alleged retaliation occurred during October 2018. Plaintiff alleged that he was transferred to another facility, which caused the loss of his prison job, in retaliation for filing grievances and pursuing civil litigation. He raised this claim against defendants White and Parsons. (ECF No. 1, PageID.13).

Preliminarily, this claim should be dismissed against White because Plaintiff testified at his deposition that White had nothing to do with his transfer and he did not know why he named White in this claim. (*See* ECF No. 48, PageID.342). White is entitled to judgment on this claim based on Plaintiff's testimony.

As to Parsons, Plaintiff testified that Parsons called him to his office to discuss Plaintiff's grievance about access to the courts. Parsons said he would investigate the issue and mentioned Plaintiff's prison job during this encounter. A few days later Plaintiff sent Parsons a letter asking that he file Plaintiff's grievance. Three days later Plaintiff was transferred to another facility. This was an

administrative transfer, which Plaintiff said had to be initiated inside the prison. Parsons did not mention a transfer during their encounter. (*Id.* at PageID.342-43).

Plaintiff believes Parsons was involved in the transfer because of the timeline of events—the temporal proximity between the grievance, the meeting about the grievance, and the transfer.

In an affidavit, Parsons stated that he never threatened or retaliated against Plaintiff based on a grievance or any other reason. He also stated he lacked the ability to initiate or approve prisoner transfers. (*Id.* at PageID.389, at ¶¶ 4, 5). Defendants argue that since there is no evidence that Parsons was connected to the transfer, the claim should be dismissed. (*Id.* at PageID.323-24). In response, Plaintiff recited the law governing retaliation claims, but did not provide any meaningful analysis of the facts presented in Defendants' motion. (ECF No. 50, PageID.405-06).

Defendants argue that the evidence shows Parsons was not involved in the transfer. They assert that Plaintiff is just assuming that Parsons was involved based on the timing, but temporal proximity alone does not establish causation.

The facts bearing on the second element of the claim, even viewed in the light most favorable to Plaintiff, support Parsons's position. Plaintiff could only testify that he thought Parsons was involved because of the timing. He stated that Parsons did not mention a transfer during their encounter. Parsons swears he was

not involved in the transfer and could not have initiated such. Parsons's statements do not contradict Plaintiff's testimony; there is no creditability determination to make. Notably, Plaintiff did not argue or put forth evidence that would create a genuine issue of material fact on Parsons's ability to initiate a transfer. As Defendants point out, Plaintiff only assumes Parsons was involved, but Parsons's sworn statements are that he was not involved.

To the extent that a jury could credit Plaintiff's assumption of involvement over Parsons's declarations, Plaintiff's claim would still fail at the third element. Under the causation element for retaliation, the subjective motivation of the defendant is at issue; the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. *Thaddeus–X,* 175 F.3d at 399. The comments attributed to Parsons—mentioning Plaintiff's job and discussing the grievance with Plaintiff—do not establish a connection between Plaintiff's grievance and his transfer. In fact, Plaintiff specifically testified that Parsons did not mention a transfer, and does not challenge Parsons' declaration that he was not involved in the transfer. *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (concluding that prison official's comments that prisoner could be transferred and say it was based on institutional needs did not establish causation because it was uncontroverted that the official was not the decisionmaker).

Without evidence that Parsons was a decisionmaker, or some other connection between Parsons and the transfer, Plaintiff can rely only on the temporal proximity between his conversation with Parsons, the grievance, and the transfer.  As Defendants noted, temporal proximity alone cannot establish a causal connection between protected activity and adverse action.  *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim.").  Plaintiff did not bring forth evidence showing a retaliatory motive.  The mere suggestion of temporal proximity, under these circumstances, is not something a reasonable jury could rely on to find in Plaintiff's favor.

D.   Hygiene Claim

To establish an Eighth Amendment violation, the prisoner must show that he was deprived of the minimal necessities of civilized life and that prison officials were deliberately indifferent to his needs.  *Powell v. Washington*, 720 F. App'x 222, 227-28 (6th Cir. 2017) (citation omitted).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (citation omitted).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954

(6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

A prison official's deliberate indifference to a sufficiently serious risk to the health or safety of an inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish deliberate indifference, an inmate must satisfy an objective and subjective prong. *Id*. at 834. The objective prong requires a showing that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* And the subjective prong requires the inmate to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837.

Plaintiff alleged that defendants Washington, Christiansen, Scott, Fighter, and Colthorp violated his Eighth Amendment rights by denying him soap, toothbrushes, toothpaste, and basic hygiene supplies during October and November 2018, and March, April, and May 2019. He asserted that he was harassed and threatened by other inmates because of his odor, and he experienced "personal discomfort." (ECF No. 1, PageID.14, 16). Plaintiff filed a grievance about the hygiene products on May 24, 2019.

As an initial matter, the undersigned agrees with Defendants that they should be dismissed from the claims beginning at the end of October 2018 through March 2019 because Plaintiff was housed at a different facility where they did not work. (ECF No. 1, PageID.13).  It stands to reason that the defendants were not subjectively deliberately indifferent to a risk of harm to Plaintiff while he was housed in a different facility over which they did not have control.  Effectively, his claim against these Defendants is that he was deprived of hygiene products in April and May 2019.  (*See* ECF No. 48, PageID.344, at p. 28) (Plaintiff agreed that his grievance on this issue was addressed only for the months of March to May 2019 while he was at STF).

The claim fails on both the objective and subjective prongs.  There is no evidence that Plaintiff was incarcerated under conditions posing an objectively substantial risk of serious harm.  His complaint allegations that he was harassed and suffered personal discomfort cannot be evaluated by a jury because the complaint is unverified.  *See Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir.  2001) ("[I]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." (quoting *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (stating that allegations in a properly *verified* complaint can be considered at this stage).  There is no testimony or other

evidence that can be considered by a jury that establishes, or even suggests, that Plaintiff was living under a risk of serious harm from being deprived of hygiene products from March to May 2019.

As for the subjective component, Plaintiff's testimony about how the Defendants were involved does not show that they were aware of a risk of serious harm but ignored that risk.[1]  First, Defendants Washington and Fighter, according to Plaintiff's testimony, were unaware of the hygiene issue until after Plaintiff filed the May 24, 2019, grievance.  They were involved in this issue only because of their roles in addressing Plaintiff's grievance at Steps II and III.  (ECF No. 48, PageID.343, at p. 24-25).  Plaintiff's testimony was not accurate.  Fighter was the Step I respondent.  She interviewed Plaintiff and issued the response on June 13, 2019.  Fighter wrote that she gave Plaintiff two indigent kits, which presumably contained personal hygiene products.  (ECF No. 22-3, PageID.127).  The Step III response was issued on July 11, 2019.  Washington was not the respondent.  (*Id.* at PageID.123).  Fighter's role in denying the grievance is insufficient personal involvement to attach liability.  *See O'Brien v. Michigan Dep't of Corr.*, 592 F.

---

[1] Plaintiff's response is unhelpful.  He stated that the "record is clear that Plaintiff was being harassed due to forced poor personal hygiene."  (ECF No. 50, PageID.408).  The record is not clear on this point.  "Harassment" only appears in the unverified complaint.  Plaintiff also stated that the subjective element is met because he does not have to show that a prison official acted or failed to act believing that harm would occur, that it is enough that they acted or failed to act despite knowledge of a substantial risk of harm.  (*Id.*).  As explained herein, the evidence does not show that the Defendants were aware of a substantial risk of harm.

App'x 338, 341 (6th Cir. 2014) (holding that a defendant's denial of an administrative grievance was "insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983"); *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) ("the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983").  Moreover, her denial of the grievance, alone, does not show that she disregarded a risk of harm to Plaintiff, especially considering she gave him two indigent prisoner kits.  As for Washington, the record does not establish that she was involved in the grievance process as Plaintiff testified.  Even if she were, like Fighter, denial of a grievance is neither sufficient personal involvement nor evidence of deliberate indifference.

The only Defendants that knew of the lack of hygiene supplies before the May 24, 2019, grievance are Christiansen, Scott, and Colthorp.  Plaintiff testified that he spoke to Christiansen and Scott about his request for hygiene products about a month prior to filing the May 2019 grievance.  (ECF No. 48, PageID.344, at p. 26).  These Defendants, presumably, did not take action to provide Plaintiff with personal hygiene products.  Their inaction does not satisfy the subjective component.  That Christiansen and Scott knew that Plaintiff did not have hygiene products in April and May 2019 does not establish that they were aware of a serious risk of harm to Plaintiff's health or safety and deliberately disregarded that

risk.  There are no facts suggesting that either Defendant was aware of threats to Plaintiff's safety or a health issue created or exacerbated by the lack of hygiene products when they failed to respond to Plaintiff's request in April and May.  No reasonable jury could conclude that Christiansen and Scott were subjectively deliberately indifferent on the facts presented.

Plaintiff testified that Colthorp was the person who processed indigent orders, like Plaintiff's orders for supplies.  Colthorp told Plaintiff that he had a second commissary order in place that obstructed the indigent order for supplies, which meant that Plaintiff could not get the hygiene products.  (ECF No. 48, PageID.344, at pp. 26-27).  Plaintiff did not state when this conversation took place, but it must have occurred sometime while Plaintiff was at STF from March through May 2019.  As with Christiansen and Scott, Colthorp's knowledge that Plaintiff would go without personal hygiene for perhaps a few months, without more, does not establish that he deliberately disregarded a *known* risk to Plaintiff's health or safety.  The jury would be presented only with the fact that Colthorp did not place the order for supplies because of another order already in place.  A reasonable jury could not conclude, on that information alone, that Colthorp was aware of a risk of harm that he chose to ignore.

## III.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment (ECF No. 48) be **GRANTED** and Plaintiff's complaint be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 21, 2022          <u>s/Curtis Ivy, Jr.</u>
Curtis Ivy, Jr.
United States Magistrate Judge