UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD DIEDERICH,

     Plaintiff,

                                       Case No. 19-cv-12799

v.                                   Hon. Matthew F. Leitman

HEIDI WASHINGTON, *et al.*,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 76)

Plaintiff Chad Diederich was formerly an inmate in the custody of the Michigan Department of Corrections (the "MDOC").  Diederich, who was indigent for much of the relevant time period underlying his claims, brought this action *pro se* under 42 U.S.C. § 1983 against several employees and officials employed by the MDOC. (*See* Compl., ECF No. 1.)  The following claims by Diederich remain alive at this point: that some or all of the remaining Defendants (1) refused to provide him paper and envelopes that he needed to file legal claims and/or motions in various courts (the "Access to Courts Claim"); (2) retaliated against him for filing grievances and lawsuits by transferring him to another prison (the "Retaliation Claim"); and (3) refused to provide him with basic hygiene products (the "Hygiene Claim").

1

The Defendants have now filed a motion for summary judgment on the remaining claims. (*See* Mot., ECF No. 76.)   Their motion does not raise the defense of qualified immunity.  Diederich, who is now represented by counsel,[1] has filed a response to the motion. (*See* Resp., ECF No. 77.)

The Court concludes that it may resolve Defendants' motion without oral argument. *See* E.D. Mich. Local Rule 7.1(f)(2).  For the reasons explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I

The Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Under that rule, a movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (quoting Fed. R. Civ. P. 56). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* But "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477

---

[1] After the case had been pending for a period of time, Attorney Magy E. Shenouda accepted an appointment to represent Diederich on a *pro bono* basis.  She has done an outstanding job on Diederich's behalf, and the Court greatly appreciates her service.  Likewise, Assistant Attorney General O.G. Reasons has done a terrific job representing the Defendants in this action.

U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.

## II

The Court begins with Diederich's Access to Courts Claim. Diederich originally alleged in this claim that some of the Defendants impeded him from pursuing several court actions. (*See* Compl., ECF No. 1, PageID.13.) He now contends only that Defendant Nicholas White, a Prison Counselor at the Central Michigan Correctional Facility, hindered his ability to participate in a single proceeding: a habeas corpus action related to criminal charges pending against Diederich in an Iowa state court. (*See* Resp., ECF No. 77, PageID.648-651.[2]) The Court therefore confines its analysis of the Access to Courts Claim to the Iowa habeas proceedings.

## A

It is well-established that prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). A claim for denial of

---

[2] The Defendants moved for summary judgment on the entirety of the Access to Courts Claim as originally pleaded, and in Diederich's response to the motion, he defended only the portion of the claim related to the Iowa habeas proceedings. (*See* Resp., ECF No. 77, PageID.648-651.) Diederich "is [therefore] deemed to have abandoned" the other portions of the Access to Courts Claim because he "failed to address [those aspects of the claim] in response to [Defendants'] motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 Fed. App'x 368, 372 (6th Cir. 2013).

access to the courts may be "forward-looking" or "backward-looking." *Flagg v. City of Detroit*, 715 F.3d 165, 173 (6th Cir. 2013).  A forward-looking claim seeks to "eliminate the condition" blocking the prisoner's access to the courts. *Id.*  In a backward-looking claim, the prisoner asserts that due to the actions of the defendant, he is "unable to ever obtain an adequate remedy on the underlying claim" that he wished to pursue in court. *Id.*  Diederich's remaining Access to Courts Claim looks backwards.

To establish his backwards-looking claim, Diederich must show: "(1) a non-frivolous underlying claim, (2) obstructive actions by state actors, (3) substantial prejudice to the underlying claim that cannot be remedied by the state court, and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Id.* at 174 (internal citations omitted) (cleaned up); *see also Nguyen v. Floyd*, 618 F.Supp.3d 629, 633 (E.D. Mich. 2022).  Diederich need not show that the underlying claim "would have been successful; instead, deprivation of an 'arguable (though not yet established) claim' is sufficient." *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  Finally, Diederich must show that he suffered "actual injury" as a result of the denial of access. *Lewis*, 518 U.S. at 349.

**B**

Diederich alleges that White denied him access to "proper paper and envelopes needed to draft and mail filings related to his . . . habeas corpus action," and as a result, he was unable to timely pursue a writ of habeas corpus in the State of Iowa. (Compl., ECF No. 1, PageID.12.)   Diederich's allegations related to the Iowa habeas proceedings are difficult to follow.  He appears to suggest that had White not interfered with his (Diederich's) ability to participate in the Iowa habeas proceedings, he could have been transferred from MDOC custody to the custody of the Iowa state court, pleaded guilty to charges pending against him in Iowa, and then been allowed to serve his Iowa and Michigan sentences concurrently. (*See* Resp., ECF No. 76, PageID.650-651.)

Diederich's own testimony shows that he lacks sufficient evidence that White caused him to lose out on any remedy or relief that may have been available to him in the Iowa proceedings:

> Q:  [Y]ou say your ability to pursue a writ of habeas corpus in the state of Iowa. Can you tell me able that claim?
>
> A:  Yeah, I had pending charges out of Iowa I was trying to get taken care of, but I couldn't file a writ of habe[as corpus] with them.
>
> Q:  And what do you mean by that? You had pending charges, what were you going to file?
>
> A:  A writ of habeas corpus with them.

Q:     Saying what?

A:     To answer the charges they were bringing forth.

Q:     Oh, you were going to ask to be transferred to Iowa to – for those charges?

A:     Yes.

Q:     So what did you lose out on?

A:     The ability to pursue those in a timely manner.

Q:     So what's going on with those charges now?

A:     They're still pending.

Q:     But you've been released from prison, right?

A:     Yes.

Q:     And you haven't taken care of those cases?

A:     No, I can't leave the state of Michigan.

Q:     So what would have been different back then? If you can't leave the state of Michigan what would have been different in 2000 –

A:     My time in custody would have counted towards the time that they would have sentenced me to.

Q:     Your time in custody would have counted towards the time they would have sentenced you to in Iowa?

A:     Correct.

Q:     I don't understand what you're talking about by that. Can you explain that to me?

A:     Well, once the writ is filed and accepted by the court, then basically my time starts tolling in the state of Iowa.

Q:     So you're basically saying you're guilty of the charge in Iowa and you want to go ahead and do the time for it?

A:     Correct.

Q:     And –

A:     I mean, I guess. I don't know the nature of the charges yet but…

Q:     You don't know the nature of the charges, but you wanted to go ahead and serve a sentence for it?

A:     No, but that's what blocked me from – from tolling my time for a speedy trial and everything with them.

Q:     So you don't know the nature of the charges so you don't know if you're going to fight the charges, plead to the charges, or what then?

A:     Right, yeah.

**Q:     So you have no idea what you lost out on then?**

**A:     No.**

(Diederich Dep. at 16:17-19:4, ECF No. 48, PageID.341-342; emphasis added.)

Given Diederich's admission that he has "no idea" what he lost out on as a result of being unable to timely seek a writ of habeas corpus, he cannot establish the required element of his claim that White caused him to lose out on available relief.

Moreover (and in any event), Diederich has not pointed to any authority suggesting that an Iowa court could have issued a writ of habeas corpus that would have resulted in his transfer from MDOC custody to the Iowa state court.  Likewise, he has not provided any details concerning the Iowa criminal proceedings, nor has he cited any authority for the proposition that an Iowa court could have (or would have) ordered that his Iowa sentence run concurrent to his Michigan sentences.  Simply put, Diederich has failed to show that the Iowa habeas corpus proceedings presented anything "more than a mere hope." *Nguyen*, 618 F.Supp.3d at 633.  The Access to Courts Claim thus fails as a matter of law.

## C

For the reasons explained above, the Court **GRANTS** summary judgment in favor of White on the Access to Courts Claim.

## III

The Court next turns to the Retaliation Claim.  Diederich brings this claim against Defendant Jason Parsons.[3]  Parsons was a Grievance Coordinator at the Central Michigan Correctional Facility.

---

[3] Diederich originally asserted a retaliation claim against White as well.  However, during his deposition, Diederich testified that White did "nothing that [he is] aware of" to retaliate against him and that he (Diederich) "didn't know" he was suing White for retaliation. (Diederich Dep. at 20:17-21:10, ECF No. 48, PageID.342.)  Diederich did not address his retaliation claim against White in his response to Defendants' motion for summary judgment. (*See* Resp., ECF No. 77.)  Accordingly, Diederich's

## A

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). A defendant may be held liable for retaliation only if the defendant personally participates in the retaliatory conduct. *See Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020) ("Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury.").

## B

In the Retaliation Claim, Diederich alleges that Parsons retaliated against him for filing grievances and lawsuits. (*See* Compl., ECF No. 1, PageID.13.) Diederich claims that after he "pursu[ed] grievances" and a "civil action against" Parsons, Parsons "threaten[ed]" that he (Diederich) would "lose his institutional job." (*Id.*) Diederich claims that he was thereafter transferred to a new correctional institution, and he says that the transfer caused him to lose his job. (*See id.*, PageID.16.) The

---

retaliation claim against White has been abandoned. *See Brown*, 545 F. App'x at 372.

Court concludes that Parsons is entitled to summary judgment on this claim because there is insufficient evidence that Parsons was involved in and/or caused Diederich's transfer.

Parsons testified at his deposition that he did not make, and was not involved in any way with, the decision to transfer Diederich. (*See* Parsons Dep. at 22:2-24, ECF No. 76-4, PageID.619.)  Parsons further testified that he "ha[s] no idea" how inmates get transferred, that he is "not involved" with that process, he cannot "make [the] suggestion" that an inmate be transferred, and he is not consulted when an inmate is being transferred. (*Id.*)

Diederich has not presented sufficient evidence to create a material dispute of fact as to whether Parsons was involved in his transfer.  Diederich highlights the temporal proximity between his filing of grievances and his transfer. (*See* Resp., ECF No. 77, PageID.651.)  But while temporal proximity may be evidence of *why* allegedly-retaliatory action was taken, *see, e.g.*, *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (explaining in the context of analyzing a First Amendment retaliation claim that evidence of temporal proximity "is relevant to causation"), Diederich has not cited any authority for the proposition that evidence of temporal proximity is sufficient to support a finding as to *who* took the allegedly-retaliatory action.

Moreover (and in any event), there is a missing link in Diederich's argument based on temporal proximity.  Diederich reasons that Parsons must have played a role in the transfer because the transfer (1) happened shortly after Parsons threatened that he (Diederich) would lose his job and (2) caused him to lose his job.  Stated another way, Diederich's theory is that Parsons must have been involved in the transfer because the transfer achieved the result that Parsons threatened and did so shortly after Parsons made the threat.  This line of reasoning works only if Parsons knew or had reason to know that transferring Diederich would result in the loss of Diederich's job.  But Diederich has not presented any evidence of that.  Diederich says that the transfer resulted in his job loss because there was a waiting list for the same job that he previously held at the facility to which he was transferred. (*See* Diederich Dep. at 23:1-7, ECF No. 48, PageID.343.)  However, Diederich has not shown that Parsons knew about the waiting list at the other facility – where Parsons did not work.  Nor has Diederich presented evidence that Parsons had any reason to believe that the transfer would result in the loss of Diederich's job.  Thus, even if, as Diederich claims, Parsons threatened that Diederich would lose his job, the evidence is insufficient to link that threat to Diederich's transfer and ensuing job loss.

In sum, Diederich has failed to come forward with sufficient evidence to create a genuine issue of material fact as to whether Parsons caused, or participated in any way in, Diederich's transfer.

## C

For the reasons explained above, the Court **GRANTS** summary judgment in favor of Parsons on the Retaliation Claim.

## IV

Finally, the Court addresses the Hygiene Claim.  Diederich brings this claim against Defendants John Christensen, Warden; Ivan Scott, Resident Unit Manager; Heidi Washington, MDOC Director; Terri Fighter Daniels,[4] Resident Unit Manager; and Vance Colthorp, Storekeeper.  All of these Defendants worked at the Central Michigan Correctional Facility.

## A

The Court begins with some background concerning the Hygiene Claim.  The claim arises out of acts and omissions that allegedly occurred in 2018 and 2019.

In October of 2018, Diederich was transferred from the Central Michigan Correctional Facility in St. Louis, Michigan, to the Cooper Street Correctional Facility in Jackson, Michigan.  Diederich was incarcerated at the Cooper Street Correctional Facility from roughly October of 2018 through March of 2019.  Diederich claims that during that five-month period, he was denied access to "soap, toothbrushes, toothpaste and basic hygiene needs." (Compl., ECF No. 1, PageID.14; *see also* Diederich 2nd Dep. at 6:11-14, ECF No. 76-3, PageID.597.)

---

[4] In Diederich's testimony, he refers to Daniels as Fighter, rather than Daniels.

Diederich was transferred from the Cooper Street Correctional Facility back to the Central Michigan Correctional Facility in March of 2019. He contends that at some time during the following month, in April of 2019, he told the Defendants that he had been deprived of hygiene products and that he asked the Defendants to provide him with those products. He says that with the exception of Daniels providing him one or two single-use hygiene kits, none of the Defendants provided him with any of the basic hygiene materials he needed and requested. (*See* Diederich 2nd Dep. at 8:13-23, 22:4-13, ECF No. 76-3, PageID.599, 613.) Diederich says that as a result, between April and June of 2019, he went without "[s]oap, toothpaste, toothbrush, shampoo, deodorant, [and] over-the-counter medications," such as "heartburn medicine" and "lotion." (*Id.* at 6:11-25, 8:13-23, 22:4-13, PageID.597, 599, 613.)

Diederich claims that Defendants' failure to provide him with hygiene materials under these circumstances constitutes deliberate indifference and rises to the level of a violation of his Eighth Amendment rights.

**B**

The Court now turns to the legal rules governing the Hygiene Claim. The Eighth Amendment protects inmates against being "denied 'the basic elements of hygiene[.]'" *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986) (quoting *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967)). There are two components to an

13

Eighth Amendment deliberate indifference claim: one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, Diederich must show that the denial of hygiene products was "sufficiently serious" – that is, that his conditions posed a "substantial risk of serious harm." *Id.* "In the context of 'conditions of confinement' cases, the Eighth Amendment is concerned only with 'deprivations of essential food, medical care or sanitation' or 'other conditions intolerable for prison.'" *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To satisfy the subjective component, Diederich must show that the Defendants had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* That standard requires that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the injury could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Finally, in order to prevail against a Defendant on the Hygiene Claim, Diederich must show that that Defendant was personally involved in the denial of hygiene products. *See Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020) ("Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury.").

## C

Defendants argue that Diederich cannot establish the objective component of the Hygiene Claim because "there was never a complete denial" of hygiene products. (Mot., ECF No. 76, PageID.575-578.)   As support for this contention, Defendants cite Diederich's testimony that he was given a single bar of soap every week. (*See id.*)  But Diederich explained that the lone bar of soap was so "little" that it was "about one shower worth." (Diederich 2nd Dep. at 7:3-8, PageID.598.)  Moreover, the one small bar of soap did nothing to address Diederich's lack of basic dental hygiene materials.

On a related note, Defendants also highlight that Diederich admitted during his deposition that he was able to obtain additional bars of soap by trading with other inmates. (*See* Mot., ECF No. 76, PageID.577.)  Again, however, Diederich's ability to obtain soap did not address the deprivation of dental hygiene materials.  Moreover, the trading described by Diederich was the trading of his "dinner trays" for soap (Diederich 2nd Dep. at 8:24-9:6, ECF No. 76-3, PageID.599-600), and the fact that Diederich may have been able to obtain soap by going hungry simply cannot be a mitigating circumstance here.

Defendants also say that Diederich cannot satisfy the objective component of the Hygiene Claim because he has "provided no evidence of any detrimental effect of [the] alleged denial of hygiene products[.]" (Mot., ECF No. 76, PageID.577.)

15

However, this argument ignores Diederich's testimony that he had "a severe plaque buildup" on his teeth that he "had to get taken care of when [he] was released." (Diederich 2nd Dep. at 14:19-21, ECF No. 76-3, PageID.605.)   Diederich also testified that he suffered from "constant athlete's foot and jock itch" during the relevant time period. (*Id.* at 14:19-15:1, PageID.605-606.)  Diederich further claims that as a result of his "being unclean," and "ha[ving] odor," he was "punched . . . in the head a couple times" and "hit in the mouth with a baseball bat[.]" (*Id.* at 11:23-13:15, PageID.602-604.)  He claims that during one such assault, he "chipped [his] tooth[.]" (*Id.* at 13:17-18, PageID.604.)

A jury could find that the deprivation of hygiene products for the extended period of time here, causing the injuries Diederich has described, is sufficiently serious to satisfy the objective component of the Hygiene Claim.  *See James v. O'Sullivan*, 62 F. App'x 636, 639 (7th Cir. 2003) (denial of toothbrush, toothpaste, and soap for 49 days could "jeopardize basic levels of sanitation and hygiene" sufficient to satisfy the objective component of an Eighth Amendment claim); *Board v. Farnham*, 394 F.3d 469, 482–83 (7th Cir. 2005) (deprivation of toothpaste for 3.5 weeks may be objectively serious); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (denial of toothpaste for two months causing gum recession and tooth decay presented a genuine issue of material fact as to whether the denial caused serious harm); *McDaniel v. Chambers-Smith*, No. 22-cv-3802, 2024 WL 4227052,

at *3 (S.D. Ohio Sept. 18, 2024) (complete deprivation of access to showers, soap, and the ability to brush teeth for two months sufficiently serious to state a claim for relief under the Eighth Amendment).

**D**

In addition to arguing that Diederich cannot satisfy the objective component of the Hygiene Claim, the Defendants present additional arguments as to why the claim fails as against each individual Defendant.  The Court addresses those Defendant-specific arguments below.

**1**

The Court begins with Defendants' arguments as to why Washington – who served as the Director of the MDOC during the relevant time period – is entitled to summary judgment.  The Defendants argue that the Court should grant summary judgment in favor of Washington because Diederich alleges only that she denied one of his Step III grievance appeals, and they contend that the denial of a grievance, standing alone, generally does not give rise to liability under Section 1983. (*See* Mot., ECF No. 76, PageID.572, citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) and *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988)).  The Court agrees.

Diederich counters that he "has testified that he notified every one of Defendants that he did not have access to hygiene products and requested the products from the Defendants, whether in person or through filing a grievance," and

17

he insists that all "Defendants were aware that [he] lacked access to hygiene products yet they did nothing about it[.]" (Resp., ECF No. 66, PageID.661.)  But Diederich did not testify as to any communications with Washington.  Therefore, Diederich has not presented sufficient evidence to hold Washington liable for the Hygiene Claim under Section 1983.

For these reasons, the Court **GRANTS** summary judgment in favor of Washington on the Hygiene Claim.

## 2

The Court next addresses Defendants' arguments as to why Christensen – who served as the Warden of the Central Michigan Correctional Facility while Diederich was there – is entitled to summary judgment on the Hygiene Claim.

The Defendants first argue that the Court should enter summary judgment in favor of Christensen based upon "[t]he same grievance involvement analysis" (set forth immediately above) that applies to Washington. (Mot., ECF No. 76, PageID.573.)   But Diederich has presented evidence that Christensen did more than merely deny a grievance.  Diederich has testified that he told Christensen about his lack of hygiene materials, that Christensen acknowledged that communication, and that Christensen did not thereafter rectify the problem. (*See* Diederich Dep. at 24:19-25:8, ECF No. 48, PageID.343.)   Because there is evidence that Christensen did

more than merely deny a grievance, he is not entitled to summary judgment based upon "[t]he same grievance involvement analysis" that applied to Washington.

Defendants next argue that Christiansen cannot be liable for a failure to supervise. (*See* Mot., ECF No. 77, PageID.573.)  But that is not the theory that Diederich advances against Christensen.  Diederich does not allege that Christiansen was liable for somebody else's failure to provide hygiene products. Rather, as explained above, Diederich claims that he personally told Christiansen that he had did not have access to hygiene products for five months, Christiansen said he would look into it, and Christiansen did not remedy the situation.

Finally, Defendants argue in a perfunctory fashion that Diederich cannot meet the subjective component of his Hygiene Claim against Christensen. (*See* Mot., ECF No. 76, PageID.579-580.)  In this argument, they do not cite any testimony or other sworn statements by Christensen. (*See id.*)  Nor do they attempt to show in any detail how Christensen lacked the state of mind required to satisfy the deliberate indifference standard that applies to the Hygiene Claim. (*See id.*)  Instead, they seem to suggest – in a single sentence – that Christensen cannot have any liability on the Hygiene Claim because Christensen was not told about the lack of hygiene materials until around April 2019 – which was many months into the deprivation of hygiene products and only two months before the deprivation ended. (*See id.*)  If that is the argument Defendants are making, the Court respectfully disagrees with it.  While it

may be true that Christensen cannot be held liable for deprivations that occurred before he was aware that there was a problem, it does not follow that he cannot be held liable for failing to act to provide hygiene materials when he was told about the situation and about Diederich's circumstances.  Moreover, roughly two months passed between the time that Diederich told Christensen about his lack of hygiene products and the time that the situation was remedied.  Simply put, Defendants have not yet persuaded the Court that the Hygiene Claim against Christensen must fail as a matter of law even though, as Diederich says, Christensen took no action to resolve the existing deprivation of hygiene products.

For these reasons, Defendants' motion for summary judgment as to Defendant Christiansen on Diederich's Hygiene Claim is **DENIED**.

**3**

The Court now turns to Defendants' arguments with respect to Scott.  Scott was a Resident Unit Manager at the Central Michigan Correctional Facility while Diederich was housed there.

Defendants first argue that Scott is entitled to summary judgment based on the "same reasoning" applicable to Washington above – *i.e.*, that the claim fails because Diederich alleges only that Scott was involved in the process of reviewing grievances. (Mot., ECF No. 76, PageID.574.)   But as Defendants themselves acknowledge, Diederich alleges that Scott's role went beyond merely reviewing a

grievance. Indeed, Diederich testified that he had "spoken to Scott personally" about the denial of hygiene products "about a month before [Diederich] filed a grievance," which would have been sometime in April of 2019. (Diederich Dep. at 26:19-24, ECF No. 48, PageID.344.) And Diederich says that Scott did not take action to end the deprivation. Under these circumstances, Defendants cannot defeat the Hygiene Claim against Scott based upon the "same reasoning" that applied to Washington.

The Defendants next make the same timing argument with respect to Scott that they made with respect to Christensen – that Scott cannot be liable on the Hygiene Claim because he was not informed of the deprivation until it had been ongoing for many months. (*See* Mot., ECF No. 76, PageID.579-580.) That argument fails as to Scott for the same reasons it fails as to Christensen.

Finally, Scott's own testimony underscores that the Hygiene Claim is properly brought against him. Scott admitted that he did not care whether Diederich got the hygiene products he needed. (*See* Scott Dep. at 48:20-49:16, ECF No. 77-4, PageID.690.)

For these reasons, the Defendants' motion for summary judgment as to Defendant Scott on Diederich's Hygiene Claim is **DENIED**.

**4**

The Court next turns to Defendants' arguments as to why Daniels is entitled to summary judgment on the Hygiene Claim. Daniels was also a Resident Unit

Manager at the Central Michigan Correctional Facility while Diederich was housed there. The Court agrees with Defendants that Diederich lacks sufficient evidence to proceed against Daniels.

Diederich says that Daniels can be held liable on the Hygiene Claim because she was "aware that Mr. Diederich lacked access to hygiene products yet [she] did nothing about it." (Resp., ECF No. 77, PageID.661.) The undisputed evidence shows otherwise. Diederich testified that when he told Daniels about his lack of access to hygiene products, she gave him one or two single-use hygiene kits. (Diederich 2nd Dep. at 8:13-23, 22:4-13, ECF No. 76-3, PageID.599, 613.) Thus, it is not true that Daniels "did nothing" about Diederich's situation. She took steps that gave him at least some temporary relief. Even though Daniels perhaps could have done more, Diederich has not shown that she can be held liable on the basis that she did nothing to address his hygiene situation.

For these reasons, the Court **GRANTS** summary judgment in favor of Daniels on the Hygiene Claim.

## 5

The Court concludes with Defendants' arguments as to why Colthorp is entitled to summary judgment on the Hygiene Claim. Colthorp was a storekeeper at the Central Michigan Correctional Facility while Diederich was housed there. Diederich says that in that role, Colthorp was "the one who processes the indigent

orders" by "key[ing] them into the system" after they are "handwritten" at some time "during the month." (Diederich Dep. at 27:3-28:7, ECF No. 48, PageID.344.) Diederich claims he informed Colthorp that he did not receive his indigent order (which included an order for hygiene materials), and Colthorp responded that Diederich "had another commissary order in place and that obstructed [Diederich's] indigent order from going through." (*Id.* at 27:3-7.)  Diederich claims that Colthorp said he would "look into it." (*Id.* at 27:18-19.)

The claim against Colthorp fails because there is no evidence that Colthorp was aware that Diederich had been deprived of hygiene products.  While Diederich may have told Colthorp about problems getting certain orders processed, that is a far cry from telling Colthorp about the extent of his deprivation of hygiene products. And without knowledge of the extent of that deprivation, Colthorp could not have acted with deliberate indifference.

Diederich counters that he "has testified that he notified every one of Defendants that he did not have access to hygiene products and requested the products from the Defendants, whether in person or through filing a grievance" and "Defendants were aware that Mr. Diederich lacked access to hygiene products yet they did nothing about it[.]" (Resp., ECF No. 66, PageID.661.)  But Diederich did not testify specifically as to a conversation or communication that he had with Colthorp beyond informing Colthorp that he had not received his indigent order.

23

Moreover, Diederich has presented no evidence that Colthorp had any authority to remedy the situation or that he otherwise acted with deliberate indifference. To the contrary, the evidence suggests that indigent orders are placed through a private vendor who then processes them. (*See* Step I Grievance Supp. Forms, ECF No. 22-3, PageID.127, 135.) There is no evidence that Colthorp had the independent authority to provide an indigent prisoner free hygiene products outside of the ordering process. Ultimately, there is no evidence that Colthorp acted with the requisite state of mind in denying Diederich hygiene products.

For these reasons, the Court **GRANTS** summary judgment in favor of Colthorp on the Hygiene Claim.

## V

For the reasons explained above, the Defendants' motion for summary judgment (ECF No. 76) is **DENIED** to the extent it seeks summary judgment on the Hygiene Claim against Scott and Christiansen. The motion is **GRANTED** to the extent it seeks summary judgment on the Access to Courts Claim against White, the Retaliation Claim against White and Parsons, and the Hygiene Claim against Washington, Colthorp, and Daniels.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 24, 2025

24

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 24, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126